Julian R. Hanley, J.
By this habeas corpus, the relator is contesting the validity of his present imprisonment, arguing that he was .removed from a work release program and returned to prison without due process.
He has been serving a seven-year sentence in Attica for robbery. In October of 1973 he was given a “ work release ” program to a halfway house in Rochester. Like parole, he was subject to various conditions. He had a steady job, employed in a factory as a grinder making $3.50 per hour, working days. At nights, he stayed at the halfway house. By his own petition, he admits that he had an argument with his parole officer at the halfway house, known as Rochester Community Correction Center and the parole officer had him arrested, put in the Monroe County Jail where the jailers told him he was a “ parole violator ”. He had been at the Correctional Facility at Albion before he was put .on the work release program. Albion is an institution having various rehabilitative programs including the work release that petitioner was finally put on. He was not taken back to Albion after being in the Monroe County Jail but iwas imprisoned in Attica Correctional Facility, a maximum security institution.
He has remained in Attica until the present time. The State has never taken any formal or informal procedure even to revoke *667 the work release program that he was on. He was nevefi presented with any written statement of the charges against him. He never received any preliminary hearing on any violation charges in Monroe ¡County where the difficulty apparently occurred. He was never given a revocation hearing of any kind by the Parole Hoard.
He was called in front of the Parole Board on January 15, 1974, some two months after having been brought back to Attica. The minutes of that hearing show that no charges were presented against him. He was not allowed counsel. No witnesses were presented against him nor was he allowed to present any witnesses or evidence. This hearing was a parole release hearing for the board to decide when he should be eligible to be released on parole. It was not a hearing in any way to revoke the work release program he had been on on the outside before ■being brought back to Attica. ¡ What the board did was to discuss the alleged dispute he had had with his parole officer and then decide to hold him for a year before they would put him out on parole again. They did not even give him any reasons for not releasing him on parole but simply furnished him with a slip which said, “ Held to January, 1975 Board”, with no explanation.
The Supreme Court of the United States in the decision of Morrissey v. Brewer (408 U. S. 471) considered in detail the situation of the parolee who is out of prison on parole and then is charged with a violation. , They found that such a prisoner was entitled to due process in the administrative proceeding that should be had to revoke his parole and they listed the steps that must be followed to comply with the constitutional requirement of due process. In speaking of1 parole, the court said (pp. 481-482):
“ We turn to an examination of the nature of the interest of the parolee in his continued liberty. The liberty of a parolee enables him to do a wide range of things open to persons who had never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the 'State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in prison. * * * The parolee has relied on at least an implied *668 promise that parole .will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.
“We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a “ grievous loss ” on the parolee and often on others. * * * By whatever name, the liberty is .valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.”
Petitioner’s work release program outside prison walls is, in effect, no different from the situation of the parolee and certainly his work release ‘ ‘ by whatever name * * * is valuable ”. Here, the man .was gainfully employed, was out in society under agreed restriction and such liberty cannot be taken away from him without due process.
Therefore, peitioner, being on work release, is entitled to the same due process procedure as he would have if he was on parole when the State wants to revoke it. He should have had written charges presented to him, the opportunity for a preliminary hearing, a revocation hearing before the Parole Board with counsel, with evidence presented against him and the right to produce his own .witnesses. The State has done none of this.
It would be useless at this point to require the preliminary hearing but the other formal steps to revoke his release program can be done by the State.
Accordingly, it is ordered, that the State shall conduct a work release revocation hearing for petitioner within 30 days from the filing of this order; and it is further ordered, that in default of such revocation hearing, the petitioner is to be then restored to the work release program as it existed in October of 1973.