THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELMORE CUNNINGHAM, Respondent, v PAUL R. METZ, as Superintendent of Great Meadows Correctional Facility, Appellant.

Third Department, March 23, 1978

## APPEARANCES OF COUNSEL

*Louis J. Lefkowitz,* Attorney-General *(Frederick R. Walsh* and *Jean M. Coon* of counsel), for appellant.

*Elmore Cunningham,* respondent *pro se.*

## OPINION OF THE COURT

LARKIN, J.

■ Although the petitioner was paroled on July 6, 1977 and has not appeared in this proceeding despite due notice thereof, we choose not to dismiss the appeal on the ground of mootness because a potentially recurring issue of public interest is presented (*Matter of Amato v Ward,* 41 NY2d 469; *Matter of Beattie v New York State Bd. of Parole,* 39 NY2d 445).

The petitioner was sentenced on December 7, 1973 by the Supreme Court, Kings County, to terms of imprisonment upon convictions of robbery in the first degree and grand larceny in the third degree. While at the Edgecombe Correctional Facility in New York City, petitioner was a participant in a temporary release program under article 26 of the Correction Law. After a random test of petitioner's urine revealed the presence of quinine, a misbehavior report was filed in accordance with the regulations of the Department of Correctional Services (7 NYCRR 251.4). A superintendent's proceeding was duly held pursuant to the department's regulations (7 NYCRR Part 253), during the course of which petitioner admitted to having "snorted" some cocaine and to having tasted some quinine in the substance he thus "snorted". The disposition was a forfeiture of 60 days' good behavior allowance and a referral to the temporary release committee for consideration of a transfer to a more secure setting. The temporary release committee recommended that petitioner be removed from the work release program (a "work release program" is one type of "temporary release program" as defined by subdivisions 3 and 9 of section 851 of the Correction Law). Upon the approval of the Deputy Commissioner of the Department of Correction, this recommendation was followed.

On January 24, 1977, upon petitioner's application for habeas corpus, the Supreme Court, Washington County, ordered the appellant to show cause why petitioner "should not be granted a work release revocation hearing in accordance with due process of law". After issue had been joined, Special Term issued the judgment which is the subject of this appeal, relying upon *People ex rel. Cooper v Smith* (77 Misc 2d 666, 668), in which the court held that the "[p]etitioner's work release program outside prison walls is, in effect, no different from the situation of the parolee" and that, accordingly, before revocation he was entitled to "the same due process procedure as he would have if he was on parole when the

State wants to revoke it" *id.,* p 668). In our view this is an incorrect statement of the law, and the judgment herein must be reversed.

In *Wolff v McDonnell* (418 US 539, 560-561), the United States Supreme Court stated: "[I]t is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, *or for parolees or probationers under only limited restraints,* to the very different situation presented by a disciplinary proceeding in a state prison * * *. Prison disciplinary proceedings * * * take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." (Emphasis added.)

The court in *People ex rel. Cooper v Smith (supra),* incorrectly applied the standards set forth in *Morrissey v Brewer* (408 US 471), applicable to parole revocation proceedings, to this disciplinary proceeding involving a State prisoner. A proceeding for the revocation of a prisoner's participation in a work release program, specifically defined as a "privilege" in the relevant statute (Correction Law, § 851, subd 3), does not affect "free citizens" or "parolees * * * under only limited restraints" (cf. *Wolff v McDonnell, supra,* p 560), but rather, as with proceedings to deny a full allowance for "good time" behavior *(Matter of Amato v Ward,* 41 NY2d 469, *supra)* or to terminate a participation in a community furlough program *(People ex rel. Cordrey v State of New York, Dept. of Correctional Servs., Bd. of Parole,* 54 AD2d 1035, app dsmd 42 NY2d 999), affects only those incarcerated for violating the criminal law.

In *Wolff v McDonnell (supra),* the United States Supreme Court set forth two basic requirements of due process which must be available to prison inmates charged with misconduct: at least 24 hours' advance written notice of the charged violation and a written statement of the fact finder concerning the evidence relied upon and the action taken. (See, also, *Matter of Amato v Ward, supra.)* The superintendent's proceeding held in this case provided the petitioner with procedural protections which far exceeded these basic due process requirements. The petitioner was given written notice of the formal charge, including detailed specifications, more than 24 hours prior to the commencement of the proceeding, the opportunity to be assisted in the defense thereof by a prison employee, notice that no statement he made could be used in

a criminal action or proceeding, the right to make a statement on his own behalf and a written disposition which included a statement of the evidence relied upon (7 NYCRR Part 253). Nothing further was required *(Matter of Morales v Ward,* 89 Misc 2d 651).

The judgment should be reversed, on the law and the facts, and petition dismissed, without costs.

MAHONEY, P. J., SWEENEY, KANE and STALEY, JR., JJ., concur.

Judgment reversed, on the law and the facts, and petition dismissed, without costs.